UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

SHABANOVA VALENTINO,

                          Plaintiff,                          **COMPLAINT**

     -against-
THE CITY OF NEW YORK, P.O. DANIEL BALSDON,
SGT. NORMAN ORTEGA and "JOHN DOE/JANE
DOE," NAMES FICTITIOUS TRUE NAMES UNKNOWN
INTENDED TO BE UNKNOWN OFFICERS OF THE 25TH
COMMAND ALL POLICE OFFICERS ARE SUED AS
EMPLOYEES OF THE CITY OF NEW YORK AND IN
THEIR INDIVIDUAL CAPACITY,

                          Defendants.
------------------------------------------X

## INTRODUCTION

     This is a civil rights action for money damages  filed on behalf of SHABANOVA VALENTINO ("VALENTINO") whose rights under 42. U.S.C. Section 1983, the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution were violated by P.O DANIEL BALSDON, SGT. NORMAN ORTEGA, and other Law Enforcement Officers employed by the City of New York, as her Constitutional rights were violated.

## JURISDICTION AND VENUE

1.   This action arises under federal law and the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

2.   The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331 and 1343.

3.    The Defendant CITY OF NEW YORK ("CITY")is a municipal corporation in the State of New York, duly organized and existing under the laws of the State of New York.

4.    Defendants, P.O. DANIEL BALSDON,(BALSDON) SGT. NORMAN ORTEGA (ORTEGA) Police Officers "John and Jane Doe" are law enforcement officers working as Police Officers for the City of New York and are otherwise sui juris.

5.    The Plaintiff, "VALENTINO" at all times hereinafter mention and currently resides at 165 East 112th Street, Apt. 12E New York, New York 10029.

6.    "VALENTINO" alleges that all Defendants acted under color of State Law.

7.    This Court has jurisdiction over the "VALENTINO'S" federal claim under 28 U.S.C. Section 1331.

8.    Venue in the United States District Court for the Southern District of New York is proper pursuant to 28 U.S.C. Section 1991 since all events and omissions giving rise to "VALENTINO's" claims occurred in New York County.

9.    The individual Defendants are being sued both in their official and individual capacity.

10.   At all dates and times hereinafter mentioned, the Defendants acted in concert with the other Defendants and at the direction of the "CITY."

11. The New York City Police Department is a division of the "CITY" of New York and is responsible for the actions of its employees under the doctrine of respondeat superior.

12. At all material times, Defendants were engaged in conduct that was the proximate cause of the violations of "VALENTINO'S" federally protected rights and the damages suffered therefrom.

## STATEMENT OF FACTS

13. The incident occurred on April 15, 2024.

14. The incident occurred at approximately 7:55 P.M.

15. "VALENTINO" is Russian and speaks with a Russian accent.

16. The incident occurred as the Plaintiff was walking towards her home after exiting the grocery store ("GROCERY") located at 1626 Park Avenue, New York, N.Y.

17. The "VALENTINO" was accompanied by her boyfriend (now husband) Sergy Benimovich. ("BENIMOVICH")

18. "BENIMOVICH" is Russian and speaks with a Russian accent.

19. "VALENTINO's" dog was with her on a leash and a cat in a carrier bag.

20. "VALENTINO" was approximately 5'6" tall  weighing approximately 130 lbs.

21. "VALENTINO" entered the "GROCERY."

22. "BENIMOVICH" entered the "GROCERY."

23. "VALENTINO" entered the "GROCERY" to purchase cigarettes.

24. One Jospeh Griffin ("GRIFFIN") was in the  "GROCERY" prior to "VALENTINO" and "BENIMOVICH."

25. "GRIFFIN" began yelling and cursing at "BENIMOVICH."

26. "GRIFFIN" started to get physical with "BENIMOVICH."

27. "VALENTINO" bent down to secure her cat that was trying to get out of the carrier bag.

28. "VALENTINO" walked out of the "GROCERY" walking towards her home.

29. "BENIMOVICH"  walked out of the "GROCERY" and walked towards his home with "VALENTINO"

30. "GRIFFIN" walked out of the "GROCERY."

31. "VALENTINO" and "BENIMOVICH"  continued to walk away from the "GROCERY" towards their home.

32. "GRIFFIN" followed "VALENTINO" and "BENIMOVICH."

33. "VALENTINO" did not know "GRIFFIN."

34. "BENIMOVICH" did not know "GRIFFIN."

35. "GRIFFIN" continued to follow "VALENTINO" and "BENIMOVICH" as they walked towards their home.

36.  "GRIFFIN" struck "VALENTINO" on her head.

37. "VALENTINO" believes "GRIFFIN" struck her in the head with a chair.

38. "VALENTINO" sustained a laceration to her skull and was bleeding.

39. "GRIFFIN" then fought with "BENIMOVICH."

40. "VALENTINO" called 911."

41. "VALENTINO" reported to the 911 operator that she was assaulted by someone.

42. NYC Police Officers from the 25th command were dispatched to the scene.

43. "BALSDON" of the 25th Command responded to the scene.

44. "ORTEGA" of the 25th Command responded to the scene.

45. "ORTEGA" was the Supervising Officer on scene.

46. "BALSDON" and "ORTEGA" interviewed "BENINOVICH."

47. "VALENTINO" reported "BALSDON" and "ORTEGA" that she was holding her dog on a leash and a cat in a carrier bag, which she exhibited to "BALSDON" and "ORTEGA."

48. "VALENTINO" reported to "BALSDON" and "ORTEGA" that as she and "BENINOVICH" were walking towards their home, "GRIFFIN" struck her in the head.

49. "BENINOVICH" reported to "BALSDON" and "ORTEGA" that "GRIFFIN' hit "VALENTINO" in the head.

50. "VALENTINO" reported to "BALSDON" and "ORTEGA" that as she started to call 911, "GRIFFIN" and "BENIMOVICH" started to fight.

51. "VALENTINO" reported to "BALSDON" and "ORTEGA" that she was the one who called 911 asking for help.

52. Upon information and belief, "GRIFFIN" did not call 911.

53. "VALENTINO" told "BALSDON" and "ORTEGA" that she wanted to press charges against "GRIFFIN."

54. "BALSDON" and "ORTEGA" did not respond.

55. "VALENTINO" reported to "BALSDON"  and "ORTEGA" that she was bleeding from her head from where "GRIFFIN" struck her,  that her head hurt and needed medical attention.

56. "BALSDON" and "ORTEGA" did not call an ambulance for "VALENTINO."

57. "VALENTINO" observed "BALSDON" and "ORTEGA" speaking with "GRIFFIN."

58. "BENIMOVICH" observed "BALSDON" and "ORTEGA" speaking with "GRIFFIN."

59. "BALSDON" and "ORTEGA" then spoke with "VALENTINO" telling her that "GRIFFIN" said she fought with him and struck him with an object.

60. "VALENTINO" denied striking "GRIFFIN" with an object.

61. "BALSDON" and "ORTEGA" could not identify what the "object" was that was allegedly used.

62.  "BALDSON" and "ORTEGA" would not identify the "object" that was allegedly used.

63.  "VALENTINO" asked  "BALSDON" and "ORTEGA" if they searched to find the "object" that was allegedly used.

64. "BALSDON" and "ORTEGA" would not state if they searched for the  "object" that was allegedly used.

65.  "BALSDON" and "ORTEGA" could not state if they searched for the "object" that was allegedly used.

66. "VALENTINO" told "BALSDON" and "ORTEGA" that there were surveillance video cameras inside and outside of the "GROCERY" and if they looked at the surveillance video, they would see that "VALENTINO" did not fight with "GRIFFIN" or strike him with any "object."

67. "VALENTINO" again told "BALSDON" and "ORTEGA" that she wanted to press charges against "GRIFFIN."

68. "BENIMOVICH" told "BALSDON" and "ORTEGA" that there were surveillance video cameras inside and outside of the "GROCERY" and if they looked at the surveillance video, they would see that "VALENTINO" did not fight with "GRIFFIN."

69. "BENIMOVICH" told "BALSDON" and "ORTEGA" there were surveillance video cameras inside and outside of the "GROCERY" and if they looked at the surveillance video, they would see that "BENIMOVICH" did not fight with "GRIFFIN."

70. Upon information and belief, "BALSDON" and "ORTEGA" viewed the surveillance video cameras video depicting "GRIFFIN" fighting with "BENIMOVICH" and not "VALENTINO."

71. Although "BALSDON" and "ORTEGA" viewed the video, "BALSDON" handcuffed  "VALENTINO" and placed her into custody.

72. "VALENTINO" again told "GRIFFIN" and "ORTEGA" that she wanted to press charges against "GRIFFIN."

73. "VALENTINO" again requested medical attention because she was bleeding and not feeling well and "BALSDON" and "ORTEGA" did not call an ambulance to provide medical care.

74. "VALENTINO" was taken to the 25th precinct in handcuffs.

75. "VALENTINO" was standing with her hands cuffed behind her back in the presence of at least three (3) New York City Police Officers.

76. "VALENTINO" again stated she needed medical care as she was bleeding from her head and did not feel well.

77. As "VALENTINO" was now in the 25th precinct, and stated out loud, in front of other officers that she needed medical attention, she was taken to the Harlem Hospital.

78. "VALENTINO" reported to the Harlem Hospital personnel that she was assaulted and received a blow to her head.

79. "VALENTINO" was examined and diagnosed with two preorbital hematomas on her scalp.

80. "VALENTINO" was taken back to the 25th pct. where she was interviewed, fingerprinted, photographed, placed in a holding cell, and eventually taken to central booking.

81. P.O. Balsdon did arrest "VALENTINO" charging her with:

1. 1 Count of Assault in the Third Degree Pl 120.00(1)

2. 1 Count of Assault in the Third Degree Pl 120.00(2)

3. 1 Count of Attempted Assault in the Third Degree PL 110/120(1)

4. 1 Count of Harassment in the Second  Degree Pl 240.26(1)

A copy of the Criminal Court Complaint is annexed hereto as Exhibit "A."

82. The Criminal Court Complaint alleges that "VALENTINO" struck "GRIFFIN" with a blunt object.

83. The blunt object was not described.

84. No blunt object was found on the scene.

85. No blunt object was found on the person of "VALENTINO."

86. Upon information and belief, no video exists depicting "VALENTINO" striking "GRIFFIN" with a blunt object.

87. The Criminal Court Complaint alleges that the incident occurred inside the "GROCERY."

88. Upon information and belief, the surveillance video depicts "GRIFFIN" and "BEMINOVICH" fighting outside.

89. Sgt. Breit Feller was the NYPD Supervisor who approved the arrest of "VALENTINO."

90. "VALENTINO" was required to appear in the Criminal Court New York County to answer the criminal charges levied against her on April 16, 2024,

91. On July 25, 2024, the criminal charges against "VALENTINO" were dismissed and the record was sealed. (Exhibit "B")

92. The New York City Police Department Omniform System-Arrests report reflects that "BALSDON" and "ORTEGA" used Body Worn Cameras (Exhibit "C")

93. The New York City Complaint arrest report and The New York City Police Department Report Worksheet reflects that "BALSDON" and "ORTEGA", and Sgt. Ortega  used Body Worn

Cameras. (Exhibit "D")

94. Upon information and belief, there exist documents from the New York City Police Department reflecting that "BALSDON" and "ORTEGA" viewed a video.

### COUNT 1

**42 U.S.C. 1983 Fourth Amendment Violation against Defendant "BALSDON" for False Arrest**

95. "VALENTINO" realleges paragraphs 1-94 and incorporates them by reference herein.

96. The Defendant "BALSDON" at all relevant times was a state actor and person acting under color of state law within the meaning of 42 U.S.C. 1983 because the City of New commissions them York to exercise powers.

97. While Defendant "BALSDON" was acting under color of Law as a police officer for the City of New York, he deprived "VALENTINO" of rights secured to her under the Fourth Amendment to the United States Constitution.

98. Defendant "BALSDON" acted intentionally, with malice and knowing disregard for "VALENTINO's" constitutional rights, in falsely detaining, arresting, and imprisoning her against her will. "VALENTINO" was conscious of and at no point consented to the confinement by the Defendant "BALSDON."

99. "BALSDON's" actions in falsely detaining, arresting and imprisoning "VALENTINO" without reasonable suspicion or probable cause violated Plaintiff's Fourth Amendment rights to be free from unreasonable search, seizure and false arrest as guaranteed by the

Fourth and Fourteenth Amendments to the Constitution of the United States for which 42 U.S.C. 1983 provides a remedy.

100. The conduct of "BALDSON" was objectively unreasonable and violated "VALENTINO's" Fourth Amendment rights under the U. S. Constitution

101. At all times relevant hereto, Defendant "BALDSON" acted with malice, recklessness, and total disregard for the personal rights of the "VALENTINO."

102. The actions of "BALDSON" were the direct and proximate cause violations of Plaintiff's constitutional rights and other legal rights, and of damages as a result of the actions of "BALDSON" in effecting a false arrest. Accordingly, "VALENTINO" is entitled to compensatory and punitive damages.

## COUNT 2

**42 U.S.C. 1983 Fourth Amendment Violation against Defendant "SANTIAGO" for False Arrest**

103. "VALENTINO" realleges paragraphs 1-94, 96-102 and incorporates them by reference herein.

104. The Defendant "ORTEGA" at all relevant times was a state actor and person acting under color of state law within the meaning of 42 U.S.C. 1983 because they are commissioned by the City of New York to exercise powers.

105. While Defendant "ORTEGA" was acting under color of law as a police officer for the City of New York he deprived

"VALENTINO" of rights secured to her under the Fourth Amendment to the United States Constitution.

106. Defendant "ORTEGA" acted intentionally, with malice and knowing disregard for "VALENTINO's" constitutional rights, in falsely detaining, arresting, and imprisoning her against her will. "VALENTINO" was conscious of and at no point consented to the confinement by the Defendant "BALSDON."

107. "ORTEGA" actions in falsely detaining, arresting and imprisoning "VALENTINO" without reasonable suspicion or probable cause violated Plaintiff's Fourth Amendment rights to be free from unreasonable search, seizure and false arrest as guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States for which 42 U.S.C. 1983 provides a remedy.

108. The conduct of ""ORTEGA"" was objectively unreasonable and violated "VALENTINO's" Fourth Amendment rights under the U. S. Constitution.

109. At all times relevant hereto, Defendant "ORTEGA" acted with malice, recklessness, and total disregard for the personal rights of the "VALENTINO."

110. The actions of "ORTEGA" were the direct and proximate cause violations of "VALENTIO'S" constitutional rights and other legal rights, and of damages as a result of the actions

of "ORTEGA" in effecting a false arrest. Accordingly, "VALENTINO" is entitled to compensatory and punitive damages.

## COUNT 3

### Malicious Prosecution (Fourth Amendment)
### 42 U.S.C. 1983
### *Against All Defendants*

111. "VALENTINO" realleges paragraphs 1-94, 96-102, 104-110 and incorporates them by reference herein and incorporates them by reference herein.

112. The individual Defendants were at all relevant times state actors and persons under color of state law withing the meaning of 42 U.S.C. 1983 because the City of New York commissions them to exercise police powers.

113. The individual Defendants pressed charges against "VALENTINO" while knowing the charges were baseless and lacked probable cause. The proceedings were subsequently terminated in "VALENTINO'S" favor.

114. Statements made by the individual Defendants to justify the charges against "VALENTINO" were made with knowledge that those charges were false. The individual Defendants acted intentionally and with malice and knowing disregard for Plaintiff's constitutional rights.

115. The individual Defendants actions were the direct and proximate cause of violations of Plaintiff's constitutional, state, and other legal rights, including loss of liberty and damages. Accordingly, Plaintiff is entitled to compensatory and punitive damages.

## COUNT 4

Failure to Intervene (Fourth Amendment)
*42 U.S.C. 1983*
*Against All Defendants*

116. "VALENTINO" realleges paragraphs 1-94, 96-102, 104-110, 112-115 and incorporates them by reference herein. and incorporates them by reference herein.

117. The individual Defendants were at all relevant times state actors and persons under color of state law withing the meaning of 42 U.S.C. 1983 because they are commissioned by the City of New York to exercise police powers.

118. During the events set forth in this Complaint and to the extent they did not participate in the false arrest of Plaintiff, the Individual Defendants stood by during the false arrest and deprivation of Plaintiff's constitutional rights and did not intervene to prevent those violations despite having an opportunity and duty to do so.

119. The individual Defendants acted intentionally with malice and knowing disregard for Plaintiffs constitutional rights.

120. The individual Defendants actions were the direct and proximate cause of violations of Plaintiff's constitutional, state, and other legal rights, including loss of liberty and damages. Accordingly, Plaintiff is entitled to compensatory and punitive damages.

## COUNT 5

### *Respondeat Superior*

121. "VALENTINO" realleges paragraphs 1-94, 96-102, 104-110, 112-115, 117-1120 and incorporates them by reference herein.

122. The conduct of the individual Defendants as described above was extreme, outrageous, and constituted an abuse of their authority. Ther individual Defendants intended to cause or recklessly disregard the risks that their conduct would damage to the Plaintiff.

123. In committing the acts alleged herein, each of the Defendants were members and agents of the NYPD, acting at all relevant times within the scope of their employment. The Defendant City of New York is accordingly liable as principal for all violations of law committed by its agents.

124. Defendants actions were the direct and proximate cause of Plaintiffs continue damages.

## PRAYER FOR RELIEF

A. On COUNT ONE a judgment for compensatory damages in an amount to be determined at trial, plus reasonable attorney fees pursuant to 42 U.S.C. § 1988, against Defendant "BALDSON."

B. On COUNT TWO a judgment for compensatory damages in an amount to be determined at trial, plus reasonable attorney fees pursuant to 42 U.S.C. § 1988, against Defendant "ORTEGA."

C. On COUNT THREE a judgment for compensatory damages in an amount to be determined at trial, plus reasonable attorney fees pursuant to 42 U.S.C. § 1988, against aa Defendants.

D. On COUNT FOUR a judgment for compensatory damages in an amount to be determined at trial, plus reasonable attorney fees pursuant to 42 U.S.C. § 1988, against aa Defendants.

E. On COUNT FIVE a judgment for compensatory damages in an amount to be determined at trial, plus reasonable attorney fees pursuant to 42 U.S.C. § 1988, against all Defendants.

F. A jury trial on all appropriate issues;

G. An award of costs and expenses against the Defendants;

H. Any and all other relief this Court may deem appropriate

Dated:   January 26, 2026                    Respectfully submitted
         New York, N.Y.
                                        /s/_____
                                           Michael B. Palillo

STATE OF NEW YORK )
                 )ss.:
COUNTY OF NEW YORK)

SHABANOVA VALENTINO, being duly sworn, deposes and says that deponent is the Plaintiff in the within action; that she has read the foregoing COMPLAINT and knows the contents thereof; that the same is true to deponent's own knowledge, except as to those matters therein stated to be alleged on information and belief, and as to those matters deponent believes it to be true.

_____
SHABANOVA VALENTINO

Sworn to before me this

__3rd__ day of February, 2026

_____
Notary Public

MICHAEL B. PALILLO
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02PA4804509
QUALIFIED NASSAU COUNTY
MY COMMISSION EXPIRES MAY 31,

Civil Case Number:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHABANOVA VALENTINO,

                Plaintiff,

    -against-

THE CITY OF NEW YORK, P.O. DANIEL BALSDON,
SGT. NORMAN ORTEGA and "JOHN DOE/JANE DOE,"
NAMES FICTITIOUS TRUE NAMES UNKNOWN
INTENDED TO BE UNKNOWN OFFICERS OF THE
25TH COMMAND ALL POLICE OFFICERS ARE SUED
AS EMPLOYEES OF THE CITY OF NEW YORK AND IN THEIR
INDIVIDUAL CAPACITY,

                Defendants.

---

## VERIFIED COMPLAINT

---

# Michael B. Palillo P.C.
*Attorneys for Plaintiff*
### *SHABANOVA VALENTINO*
*Office and Post Office Address*:
**277 Broadway, Suite 501**
**New York, NY 10007**
**(212) 608-8959**
(212) 608-0304 Fax (Not for Service)
mpalillo@palillolaw.com
(Not for Service)

---

Signature (Rule 130-1.1-a)

*Michael B. Palillo*
MICHAEL B. PALILLO, ESQ.